**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF GEORGIA**
**ATLANTA DIVISION**

| | |
|---|---|
| **DEMETRA LAVENDER, individually and on behalf of all other similarly situated**,<br><br>Plaintiff,<br><br>v.<br><br>**OPTOTRAFFIC**, **LLC**,<br><br>Defendant. | Civil Action No.: 1:25-cv-01255-JPB<br><br>CLASS ACTION |

# FIRST AMENDED CLASS ACTION COMPLAINT

COMES NOW, Plaintiff Demetra Lavender, individually and on behalf of a class of similarly situated persons as defined herein and, by and through her attorneys, and upon due diligence and personal knowledge, alleges as follows:

## INTRODUCTION

1. Plaintiff Demetra Lavender ("Plaintiff") hereby brings this action against Defendant Optotraffic, LLC (hereafter "Optotraffic") and alleges that Optotraffic, through its agreements and business relationships with several municipalities and counties throughout the state of Georgia, has illegally appropriate thousands of dollars from Georgia citizens in violation of controlling Georgia law. As explained herein, Plaintiff asserts that Optotraffic's actions are unconscionable, fraudulent, and illegal, to such an extent that a significant portion of Georgia's citizenry has been directly damaged by Optotraffic's conduct. Accordingly, on behalf of the class as defined herein, Plaintiff seeks to recover those funds that have been unlawfully and improperly collected by Optotraffic from Georgia citizens.

2. As described more herein, Optotraffic has assessed and retained from putative class members fees and charges that blatantly violate and exceed the maximum amounts allowed by Georgia's School Zone Electronic Enforcement Statute, O.C.G.A. § 40-14-18. O.C.G.A. § 40-14-18 sets forth the maximum amounts that can be assessed for monetary fines and associated fees for excessive speed in a designated school zone area. As described more herein, Optotraffic's collections from Georgia citizens directly violate the mandates of O.C.G.A. § 40-14-18. Specifically, O.C.G.A. § 40-14-18(b)(1) establishes the maximum authorized fee associated with electronic payment processing, which shall not exceed $25.00. In blatant violation of this statute, Optotraffic assesses a required and improper *additional* $4.95 to pay the citation. This action challenges Optotraffic's assessment of this $4.95 charge in violation of O.C.G.A. § 40-14-18.

3. Because the practices described herein are systematic, uniform, and common to all putative class members, Plaintiff brings her claims on behalf of a Georgia class as defined herein. In this action, Plaintiff seeks monetary relief for the improper $4.95 amounts collected by Optotraffic from class members.

## PARTIES, JURISDICTION AND VENUE

4. Plaintiff Demetra Lavender is a natural person who at all times relevant to this action is and was a citizen of the State of Georgia whose domicile is in Macon, Georgia.

5. Defendant Optotraffic, LLC is a Maryland corporation whose principal place of business is 4600 Forbes Boulevard, Suite 203, Lanham, MD, 20706, and whose registered agent for service of process in the state of process is Registered Agents, Inc. 8735 Dunwoody Place, Suite R, Atlanta, Fulton County, Georgia, 30350. Optotraffic claims to be one of the market leaders in road safety camera installations in the United States, processing thousands of citations every

year. Optotraffic operates automated traffic violation detection systems in numerous school zones and designated school areas throughout Georgia, including in Macon-Bibb County.

6. Venue and Jurisdiction are proper in the original filed state forum, as the amount in controversy does not meet the minimum requirements for federal jurisdiction.

## FACTS

### A. Georgia's School Zone Electronic Enforcement Statute, O.C.G.A. § 40-14-18

7. In 2018, the Georgia legislature passed O.C.G.A. § 40-14-18, which enabled municipalities and counties to operate photo-enforced automated programs for excessive speed in designated school zones and school areas. The statute incorporated a framework for photo-enforced excessive speeding programs and automated programs, establishing rules for the issuance of citations, review of disputed violations, maximum civil penalties and fees and payment thereof, and other rules that must be observed by local governments utilizing such photo-enforced automated programs for excessive speed in designated school zones.

8. O.C.G.A. § 40-14-18(b)(1) establishes the maximum civil monetary penalties and authorized fees for drivers photographed driving at excessive speeds in a school zone area:

> The owner of a motor vehicle shall be liable for a civil monetary penalty to the governing body of the law enforcement agency provided for in paragraph (2) of this subsection if such vehicle is found, as evidenced by photographically recorded images, to have been operated in disregard or disobedience of the speed limit within any school zone and such disregard of disobedience was not otherwise authorized by law. The amount of such civil monetary penalty shall be $75 for a first violation and $125 for a second or any subsequent violation, in addition to fees associated with the electronic processing of such civil monetary penalty which shall not exceed $25.00 . . .

### B. Optotraffic's Standard Form Agreements with Counties and Municipalities

9. Following the Georgia's legislature's enactment of O.C.G.A. § 40-14-18, many Georgia municipalities and counties elected to implement a photo-enforced, automated speeding detection program, and several selected Defendant Optotraffic to be their vendor. One such local

government utilizing Optotraffic's photo-enforced speeding violation services and equipment is Macon-Bibb County, Georgia.

10. As part of its business in providing automated speeding violation detection, imaging, and administrative services to counties and municipalities throughout Georgia, Optotraffic utilizes and enters into a standard form agreement with the local governmental entity. The standard form Service Agreement between Optotraffic and Macon-Bibb County, Georgia is attached hereto as Exhibit A.

11. The Service Agreement provides for Optotraffic as the exclusive vendor for Macon-Bibb County's photo-enforced school zone excessive speed program, responsible for all aspects of operating the program and related services, including installing and maintaining equipment, monitoring cameras and roads, issuing and mailing citations, accepting and processing payments, and additional services. Operating these services, equipment, and program is almost entirely "hands-off" for the local government, with the overwhelming majority of the work, obligations, services and duties shifted to Optotraffic.

12. At all times material hereto, the Services Agreement between Macon-Bibb County, Georgia, and Optotraffic was in full force and effect.

13. Optotraffic's Services Agreements with its municipal and county clients throughout Georgia provide, among other things, as follows:

> 2. **Fee due to OPTOTRAFFIC**: For the provisioning, deployment, maintenance & service of each Monitoring System, along with our full suite of back office processing services such as printing, mailing, web and lockbox payment processing, court docket preparation and adjudication, registration holds, call center etc. MACON-BIBB shall pay OPTOTRAFFIC:
> $25.00 Fixed Fee per Paid Citation
>
> 3. **Fee due to OPTOTRAFFI**C: For processing and administrative support, data transfer etc. involved with a 3rd party Collection Agency program for unpaid citations, MACON-BIBB shall pay OPTOTRAFFIC:

$10.00 Fixed Fee per Citation Paid through a Collection Agency.

## C. Optotraffic's Improper Practices and Violations of O.C.G.A. § 40-14-18

14. As shown above, O.C.G.A. § 40-14-18 caps the maximum fees and penalties that can be assessed and collected from violators traveling at excessive speeds in a school zone. Here, Optotraffic, through the guise of a governmental entity, is charging and collecting the improper $4.95 fee in excess of what is allowed by Georgia law.

15. In blatant violation of O.C.G.A. § 40-14-18, Optotraffic collects "electronic processing fees" that are not only fictitious, but also are in excess of the maximum cap for such fees allowed under O.C.G.A. § 40-14-18. This acton challenges Optotraffic's assessment of the *additional* $4.95 fee described herein, as Optotraffic is only permitted to assess $25 for electronic payment processing under O.C.G.A. § 40-14-18.

16. Optotraffic has a systematic and routine business practice of charging the maximum $25 allowed by statute for "electronic payment processing," despite the fact that: (1) this amount in <u>no way</u> reflects Optotraffic's actual cost for "electronic payment processing," (2) Optotraffic has conducted <u>no</u> due diligence to quantify or identify its actual cost for "electronic payment processing" and (3) the cost associated with Optotraffic's "electronic payment processing" are <u>already covered</u> through other revenue streams received by Optotraffic, including its receipt of *additional fees* (discussed herein) assessed against violators and through the per-citation fee payment that Optotraffic receives under its Services Agreement with counties and municipalities. Although Optotraffic's systematic assessment of the <u>full</u> $25 processing fee is dubious, O.C.G.A. does allow for an "electronic processing fee" that shall not exceed $25. This action challenges Optotraffic's <u>additional</u> $4.95 assessment, which is unlawful and improper.

17. Without any statutory authority and without any prior notice to the violator, Optotraffic charges and collects an additional $4.95 for citation penalties paid by violators online,

*in addition to* the full $25 "electronic processing fee" already assessed. O.C.G.A. § 40-14-18 does not authorize or allow for this additional $4.95 charge. The speeding citation sent to Plaintiff, like other class members, says nothing about this additional $4.95 fee if payment is made online, nor is it allowed by the statute.

18. None of these facts were disclosed to Plaintiff or class members. At no time did Optotraffic disclose that the $25 "electronic processing fee" was fictitious, unnecessary, and already included in the per citation fees paid to Optotraffic, nor did it disclose any facts surrounding the additional $4.95 fee for making citation payments online. Optotraffic deceptively and fraudulently sought and obtained an unlawful $4.95 charge for Plaintiff's alleged violation, thereby fraudulently and deceptively collecting and retaining money from Plaintiff in violation of Georgia law.

19. These common business practices by Optotraffic are improper, illegal, fraudulent, deceptive, and violate O.C.G.A. § 40-14-18.

**D. Plaintiff Demetra Lavender's Citation and Payment of The Improper Fees**

20. On or about February 23, 2024, images of Plaintiff's automobile were captured by one of Optotraffic's school zone cameras. Shortly thereafter, Plaintiff received in the United States mail a "CITATION-SPEED MONITORING VIOLATION" (the citation") allegedly issued by the Bibb County Sheriff's Office. A true and correct copy of this citation is incorporated herein and attached hereto as Exhibit B.

21. The citation alleged that Plaintiff was driving at excessive speed in a school zone area, and demanded payment of a "civil penalty in the amount of $100." The citation warned that "FAILURE TO PAY THE PENALTY AMOUNT SHOWN MAY RESULT IN THE REFUSAL OR SUSPENSION OF THE MOTOR VEHICLE REGISTRATION." The citation directed for

online payment of the penalty to one of Optotraffic's websites, www.onlinecitationpayment.com yet said absolutely nothing about an additional $4.95 fee for online payment.

22. The citation purported to come from the Bibb County Sheriff's Office and said nothing about Optotraffic whatsoever. Upon information and belief, the P.O. Box listed on the citation for penalty payments made by mail was not, in fact, a P.O. Box for the Bibb County Sheriff's Office, but rather was an undisclosed P.O. Box for Optotraffic.

23. On March 8, 2024, Plaintiff, using her personal credit card, paid the "civil penalty in the amount of $100.00," as well as an additional and undisclosed $4.95 fee which appeared on Plaintiff's credit card activity log, bringing the total penalty to $104.90. (See Exhibit C attached hereto.) Upon information and belief, the payment made by Plaintiff was processed and retained by Optotraffic at its home office in Maryland, even though the citation leads the recipient to believe that the payment is being made to the Bibb County Sheriff's Office.

24. When she made the payment, all material facts were not known or disclosed to Plaintiff. As described herein, Optotraffic used deceptive means and practices to obtain the unauthorized fee from Plaintiff and class members, and payment was compelled under the threat of suspension of Plaintiff's car registration.

25. The citations disseminated and used by Optotraffic throughout Georgia are standard and uniform. The citations prepared and disseminated by Optotraffic include the penalty amount and payment instructions. Optotraffic does not disclose its involvement, its name, or the fact that Optotraffic is receiving the payments and keeping a substantial portion thereof as unauthorized revenue in violation of Georgia law.

## CLASS ACTION ALLEGATIONS

26. Plaintiff brings this action as a class action pursuant to O.C.G.A. § 9-11-23 (b) and (3) on behalf of the following Class:

> All persons who were issued a citation by Optotraffic in the state of Georgia and who paid the $4.95 charge challenged herein.

27. Excluded from the Class are Defendant, its employees, officers, directors, legal representatives, heirs, successors and wholly or partly owned subsidiaries or affiliates of Defendant, Class Counsel and their employees, and the judicial officers and their immediate family members and associates court staff assigned to this case.

28. <u>Numerosity— O.C.G.A. § 9-11-23(a)(1).</u> The Class is comprised of thousands of individuals, the joinder of which in one action would be impracticable. The exact number or identification of the Class Members is presently unknown. The identity of the Class Members is ascertainable and can be determined based on Defendant's records.

29. <u>Predominance of Common Questions— O.C.G.A. § 9-11-23(a)(2).</u> The questions of law and fact common to the Class predominate over questions affecting only individual Class Members, and include, but are not limited to, the following:

a. whether Defendant assessed fees that violate O.C.G.A. § 40-14-18;

b. whether Defendant has been unjustly enriched by virtue of the practices described herein;

c. whether Defendant misrepresented and/or failed to disclose material facts to Plaintiff and class members as described herein;

d. whether Plaintiff and class members are entitled to class relief;

e. whether Defendant violated Georgia law as described herein;

30. Defendant engaged in a common course of conduct giving rise to the legal rights sought to be enforced by Plaintiff individually and on behalf of the other members of the Class. Identical statutory violations and business practices and harms are involved. Individual questions, if any, are not prevalent in comparison to the numerous common questions that dominate this action.

31. Typicality — O.C.G.A. § 9-11-23(a)(3). Plaintiff's claims are typical of those of the members of the Class in that they are based on the same underlying facts, events, and circumstances relating to Defendant's conduct.

32. Adequacy — O.C.G.A. § 9-11-23(g)(1). Plaintiff will fairly and adequately represent and protect the interests of the Class, has no interest incompatible with the interests of the Class, and has retained counsel competent and experienced in class action, consumer protection, and false advertising litigation.

33. Predominance — O.C.G.A. § 9-11-23(b)(3). Questions of law and fact common to the Class predominate over any questions affecting only individual members of the Class.

34. Superiority— O.C.G.A. § 9-11-23(b)(3). A class action is the best available method for the efficient adjudication of this litigation because individual litigation of Class Members' claims would be impracticable and individual litigation would be unduly burdensome to the courts. Plaintiff and members of the Class have suffered harm as a result of Defendant's bad faith, fraudulent, deceitful, unconscionable, unlawful, and unfair conduct. Because of the size of the individual Class Members' claims, no Class Member could afford to seek legal redress for the wrongs identified in this Complaint. Without the class action vehicle, the Class would have no reasonable remedy and would suffer losses, and Defendant would be permitted to retain the proceeds of its violations of law. A class action in this case presents fewer management problems

and provides the benefits of single adjudication, economies of scale, and comprehensive supervision by a single court.

## COUNT I
## VIOLATION OF GEORGIA RICO

35. Plaintiff adopts and incorporates all previous allegations in full.

36. Defendant's conduct as set out herein constitutes violations of O.C.G.A. § 16-14-1 *et seq*. (hereinafter the "Georgia RICO statute").

37. Plaintiff and each putative class member are a "person" with the meaning of the Georgia Rico statute.

38. Defendant is a "person" within the meaning of the Georgia RICO Statute.

39. Optotraffic is either separately and/or collectively together with its governmental entity clients, an "enterprise" within the meaning of the Georgia RICO statute.

40. In furtherance of its enterprise and widespread practices described herein, Optotraffic either separately, and/or collectively together with its clients, and/or in concert with its officers, directors, agent, and employees, engaged in prohibited and unlawful activity - - or endeavored or conspired to engage in prohibited and unlawful activity - - on two or more occasions. In fact, Optotraffic's illegal and interrelated practice was carried out over multiple transactions involving thousands of Georgia citizens. Optotraffic, directly or through its agents or affiliates, repeatedly committed, attempted to commit, and solicited, coerced, and intimated others to commit the following unlawful acts:

a. Unlawfully obtaining Plaintiff and putative class members' money by deceitful means and artful practices with the intent to deprive them of their money/property in violation of O.C.G.A. § 16-8-3 (theft by deception).

b. Knowingly and willfully violating O.C.G.A. §40-14-18.

41. Optotraffic and its agents and affiliates used standard, uniform documents in furtherance of their unlawful activity. Each act Optotraffic engaged in constitutes a separate incident of "racketeering activity" within the meaning of the Georgia RICO statute. The multiple acts of racketeering activity were interrelated, were part of a common and continuous pattern of unlawful and wrongful acts, were perpetrated for the same or similar purposes, and were not a series of disconnected, isolated or sporadic acts. They were part of the regular and routine way in which Optotraffic conducts its business in Georgia and the conduct of its business is intentionally designed to be an interrelated scheme. The multiple acts constitute a pattern of racketeering activity.

42. Optotraffic engaged in the racketeering activity with the intent, motive, and/or effect of deriving pecuniary gain.

43. Optotraffic, through this pattern of racketeering activity, directly and/or indirectly acquired the property and money of Plaintiff and the putative class members.

44. Optotraffic's wrongful acts proximately and directly caused damage to Plaintiff and putative class members. Plaintiff and putative class members' injuries flow directly from the predicate offenses set out herein.

## COUNT II
## UNJUST ENRICHMENT

45. Plaintiff adopts and incorporates all previous allegations in full.

46. Substantial benefits have been conferred on Defendant by Plaintiff and putative class members through the assessment and payment of the $4.95 fee described herein that is improper, deceptive, and illegal under controlling Georgia law. Defendant knowingly and willingly accepted and enjoyed these improper payments.

47. Defendant either knew or should have known that the payments rendered by Plaintiff and putative class members were given and received by deceptive means and in violation of controlling Georgia law. Accordingly, it would be inequitable for Defendant to retain the benefit of such payments under these circumstances.

48. Defendant's acceptance and retention of these benefits under the circumstances alleged herein make it inequitable for Defendant to retain these payments and benefits without restitution of the value thereof to Plaintiff and putative class members.

## COUNT III
## FRAUDULENT MISREPRESENTATION AND CONCEALMENT

49. Plaintiff adopts and incorporates all previous allegations in full.

50. During the class period, Defendant knowingly, fraudulently, and actively misrepresented, omitted and concealed from Georgia citizens material facts relating to the $4.95 fees assessed and collected by virtue of the citations disseminated by Defendant throughout the state of Georgia.

51. Defendant has a duty to disclose to Plaintiff and putative class members material facts surrounding the fees that it assesses and collects from Georgia citizens by virtue of the standard form citations described herein.

52. The misrepresentations, omissions and concealment complained of herein were material and were made on a uniform basis.

53. Plaintiff and putative class members putative reasonably relied upon Defendant's representations, omissions and concealment. Such reliance may also be imputed, based upon the materiality of Defendant's wrongful conduct.

54. Based upon such reliance, Plaintiff and putative class members paid the $4.95 fees described herein, and, as a result, suffered and will continue to suffer damages and economic loss.

55. Had Plaintiff and putative class members been aware of the true nature of Defendant's business practices, they would not have paid the amounts challenged in this matter.

WHEREFORE, Plaintiff prays for the following relief:

a. That Plaintiff, individually, recover compensatory damages for injuries and damages she has incurred;

b. That this Court certify this action as a class action, and that the Court find and conclude that the Plaintiff herein is an appropriate representative for the Class;

c. That the judgment be entered against Defendant in such amount as will fully and adequately compensate Plaintiff and the other class members;

d. That Plaintiff have and recover all attorney's fees and court costs;

e. That this Court grants such other and further relief as it deems just and proper.

**JURY DEMAND**

**PLAINTIFF DEMANDS TRIAL BY STRUCK JURY ON ALL ISSUES IN THIS CASE**.

Dated this 7th day of April, 2025.

*/s Brent Irby*
Brent Irby
Georgia Bar No.: 224232
Irby Law, LLC
2202 Arlington Avenue
Birmingham, AL 35205
Telephone: (205) 936-8281
Email: brent@irbylaw.net

William Greg Dobson
Georgia Bar No.: 237770
Michael J. Lober
Lober & Dobson, LLC
Robert E. Lee Building, Suite 201
830 Mulberry Street
Macon, Georgia 31201
Telephone: (478)745-7700
Facsimile: (478)745-4888
Email: wgd@lddlawyers.com
mjlober@lddlawyers.com

Todd L. Lord
Georgia Bar No.: 457855
Law Office of Todd L. Lord
Post Office Box 901
4 Courthouse Square
Cleveland, Georgia 30528
Telephone: 706-219-2239
Facsimile: 706-348-8100
Email: attytllord@windstream.net

Austin Lewis Perry
Georgia Bar No.: 577007
McClure, Ramsay, Dickerson & Escoe, LLP
38 Falls Road
Toccoa, GA 30577
Telephone: (706) 886-1150
Email: alp@mrdelaw.com

**CERTIFICATE OF SERVICE**

I hereby certify that on the 7th day of April, 2025, a true and correct copy of the foregoing has been furnished either through the Court's electronic filing or by U.S. Mail, postage prepaid, upon the following parties and other relevant individuals:

James A. Demetry
Georgia Bar No. 217573
5456 Peachtree Blvd #523
Atlanta, GA 30341
Telephone: (770) 274-4383
Fax: (770) 274-4383

/s/Brent Irby__________

# EXHIBIT A

# C-21-0017

## SERVICE AGREEMENT BY AND BETWEEN

## MACON-BIBB COUNTY, GEORGIA

## AND

## OPTOTRAFFIC, LLC

**This Service Agreement** (the "Agreement") is made and entered this 1st day of March, 2021 (the "Effective Date"), by and between Optotraffic, LLC, a Maryland Limited Liability Company with offices at 4600 Forbes Boulevard, Lanham, MD 20706 ("OPTOTRAFFIC"), and Macon-Bibb County, Georgia, a political subdivision of the State of Georgia, with offices at 700 Poplar St, Macon, Georgia 31201 ("MACON-BIBB").

**Background**

**Whereas**, OPTOTRAFFIC is in the business of providing automated traffic violation detection, imaging and administrative services to authorized municipalities and government agencies using OPTOTRAFFIC'S proprietary system (as more specifically described herein below, the "Services"); and

**Whereas**, MACON-BIBB is an authorized municipality or government agency with a need for such Services; and

**Whereas**, MACON-BIBB now desires to contract with OPTOTRAFFIC for the provision of such Services;

**NOW, THEREFORE**, for good and valuable consideration, the sufficiency of which is hereby acknowledged, MACON-BIBB and OPTOTRAFFIC agree as follows:

1. **Services.** During the Term of this Agreement, and in consideration of the Fees specified in Exhibit A, OPTOTRAFFIC shall use reasonable commercial efforts to provide the Services to MACON-BIBB in accordance with the terms and conditions of this Agreement. Services shall include the following:
   a) Detection and Recording of Potential Traffic Violations. OPTOTRAFFIC will make available to MACON-BIBB certain traffic violation detection systems, which work in conjunction with a photographic, video, or electronic camera and may also include certain equipment provided by third parties, detect other traffic violations and produce photographs, video or digital images of vehicles potentially violating traffic laws, and which may include, but are not limited to, portable, mobile, handheld and or fixed site camera systems ("Monitoring System") to detect and record potential traffic violations at the service locations(s) selected by MACON-BIBB ("Recorded Events"). MACON-BIBB agrees to operate the Monitoring System in a manner consistent with the terms and conditions of this Agreement.

The Macon-Bibb also agrees to operate all systems in compliance with applicable and prevailing laws of the State, and/or local jurisdiction.

b) Initial Validation of Recorded Events. OPTOTRAFFIC will promptly perform a preliminary review of Recorded Events data for the sole purpose of attempting to filter Recorded Event data that is of insufficient quality for further use. For example, and without limitation, OPTOTRAFFIC may filter Recorded Events data in which no motor vehicle registration plate information or only partial information is reasonably discernible from the Recorded Event. MACON-BIBB will have the sole and exclusive responsibility for the final review of Recorded Events data not filtered by OPTOTRAFFIC and the authorization and issuance of a citation thereafter.

c) Motor Vehicle Records. OPTOTRAFFIC will promptly retrieve applicable Motor Vehicle Administration ("MVA") records from Georgia and other states' databases for motor vehicles photographed in Recorded Events using registration plate information from such vehicles, where such information is reasonably discernible from the Recorded Event. MACON-BIBB agrees to provide OPTOTRAFFIC with the required authorizations and applicable access codes for OPTOTRAFFIC to effectuate such retrieval of MVA records. The retrieval of MVA records by OPTOTRAFFIC is solely for the purpose of presenting such information to MACON-BIBB and MACON-BIBB shall be responsible for confirming the accuracy of and matching the information to the subject motor vehicle in each instance. OPTOTRAFFIC agrees that it will use all MVA databases in accordance with any use limitations and restrictions imposed by the owner of the database, any government or MACON-BIBB.

d) Access to Website. After OPTOTRAFFIC has completed is preliminary review of Recorded Events data, OPTOTRAFFIC shall post Recorded Events data not filtered by OPTOTRAFFIC to OPTOTRAFFIC'S proprietary VioView™ software via the Internet to allow for MACON-BIBB'S review of Recorded Events on OPTOTRAFFIC'S website and authorization and issuance of citations. Availability of the website and VioView™ software will be generally twenty-four (24) hours per day, seven (7) days per week; provided, however, that such availability is subject to change without advance notice as a result of system maintenance, unplanned downtime, and other factors and circumstances beyond OPTOTRAFFIC'S control. OPTOTRAFFIC will not be responsible for any such reasonable unavailability or downtime. MACON-BIBB'S use of the website and the VioView™ software is governed by the terms of this Agreement and the Terms of Service attached here as Exhibit B.

e) Payments by Mail and Online. Citation payments may be made by check, money order, or credit card. OPTOTRAFFIC, directly and or through OPTOTRAFFIC'S third party processor, will process payments made by mail and, at no additional cost

to MACON-BIBB, provide the capability for individuals receiving citations to view and pay citations online by credit card. All citations and delinquent notices will expressly state that all payments of fines are to be made payable to MACON-BIBB at the designated physical or website address. All payments of citations will be deposited into the Lockbox Account described in Section 7 below. Payments of citations will be tracked using the system of record, VioView™ Financial Tracking System ("VioView FTS").

f) Citations and Delinquent/Final Notices, Printing and Mailing. OPTOTRAFFIC, directly or through OPTOTRAFFIC'S printing services provider, at no additional cost to MACON-BIBB, will print and mail via first class mail a citation issued by MACON-BIBB or MACON-BIBB'S Approving Authorities (as defined in Section 2(e) below), and as required, one delinquent notice and one final notice for each outstanding citation (collectively, "Notices") to the registered owner/lessee/other of motor vehicles bearing State of Georgia plates and out-of-state plates to whom a citation has been approved by MACON-BIBB. Such Notices will be in a fixed, standardized format pre-approved by MACON-BIBB. MACON-BIBB will be responsible for ensuring that the format and content of Notices comply with all applicable laws, rules and regulations. Citations will be mailed to the individual and address specified on the issued citations, which shall be the name, and address of the registered owner/lessee/other of the vehicle as shown on the vehicle registration records. Delinquent or Final notice(s) will be mailed to the address on the issued citation, unless an updated address becomes available to OPTOTRAFFIC.

g) Hearings. OPTOTRAFFIC will make available, at OPTOTRAFFIC's expense, a qualified expert representative to attend and provide testimony for the initial court hearing for citations, provided that OPTOTRAFFIC received at least thirty (30) days prior written notice of each such hearing. OPTOTRAFFIC is not responsible for the outcome of any such hearing. In the event of additional expert testimony requests, MACON-BIBB will reimburse OPTOTRAFFIC for costs incurred in making such expert available to testify, including reasonable travel, lodging and related expenses and time at the expert's then-current hourly rate.

h) Maintenance and Support. OPTOTRAFFIC will, in a timely and prompt manner, maintain and service the Monitoring System and assist MACON-BIBB personnel who use the Monitoring System. OPTOTRAFFIC will be on call to correct any malfunction that renders the Monitoring System inoperable during enforcement hours. Any and all maintenance records shall be considered Confidential Information (defined hereafter) and shall not be disclosed to MACON-BIBB or anyone else, except as provided in Section 8 of this Agreement.

i) Training. OPTOTRAFFIC, at no additional charge to MACON-BIBB, will be responsible to train MACON-BIBB to use the Monitoring System. This includes

training new users as staffing assignments may change at the sole discretion of MACON-BIBB.

j) Service Locations. OPTOTRAFFIC shall provide to MACON-BIBB, without charge, technical advice as to the feasibility of proposed Service Locations. MACON-BIBB intends to install Monitoring Systems in phases, with Phase One consisting of the school zones and schools listed in Exhibit A.

k) Citizen Inquiries. OPTOTRAFFIC shall provide, and include on citations, a telephone number to which recipients of citations may call Monday-Friday, 8:00 a.m. to 5:00 p.m. (EST), excluding legal holidays, to speak with a knowledgeable attendant to make inquiries and receive prompt informed answers to questions regarding topics such as citations, billing and payment procedures and status of payments and hearing dates. OPTOTRAFFIC may employ the services of a customer service call center; MACON-BIBB specifically agrees that such call center's representatives may access and view any and all information relevant and/or necessary for the provision of the Services described hereunder.

l) Hearing Dockets. Unless agreed otherwise by the parties, on not less than a monthly basis, OPTOTRAFFIC, in consultation with MACON-BIBB, shall prepare and submit to the applicable hearing officer or Court all paperwork and other documentation necessary for scheduling of hearings on all citations then ripe for review or adjudication. OPTOTRAFFIC shall only send a notice to appear at a hearing for recipients of citations who have made a timely hearing request.

m) Collections Support. OPTOTRAFFIC acknowledges that MACON-BIBB may place the collection of unpaid citations issued pursuant to the terms and conditions of this Agreement and past due debt owed to MACON-BIBB resulting from past due citations with a third party, for purposes of filing collection actions against any motorist and/or debtor who fails to pay amounts due and owing under any citations. MACON-BIBB shall be solely responsible for any and all court costs, filing fees, collection fees, attorney fees and other expenses incurred. In association with contractual agreements referenced hereunder, OPTOTRAFFIC is hereby authorized to provide a third party with whom the MACON-BIBB contracts to provide debt collections services, with any and all information relevant and/or necessary for the collection of unpaid citations, including personal information of the recipients of the citations, but MACON-BIBB is not obligated to use the third party provided by OPTOTRAFFIC. OPTOTRAFFIC'S obligations to cooperate and provide information to any third party whom the MACON-BIBB contracts to provide debt collections services shall continue throughout the term of the Agreement and for a period of twenty-four months following the termination of this Agreement. MACON-BIBB agrees to pay OPTOTRAFFIC an additional Processing and Administration Fee set forth in Exhibit A for providing information and administrative services for the collections effort performed by a third party.

n) Annual Calibration Test. OPTOTRAFFIC shall perform an independent calibration test on the Monitoring System at least once every 12 months, pursuant to O.C.G.A. § 40-14-5(c)(2). OPTOTRAFFIC shall disclose the results of these annual calibration tests to MACON-BIBB, and shall conduct any adjustments and repairs deemed necessary as a result of the tests.

o) Warning Signs. OPTOTRAFFIC shall, at no additional cost to MACON-BIBB, erect and maintain warning signs in each school zone which comply with the requirements of all applicable Georgia law, including but not limited to the requirements of O.C.G.A. § 40-14-6(c).

p) Permitting. OPTOTRAFFIC shall, at no additional cost to MACON-BIBB, be responsible for the permitting process described by O.C.G.A. § 40-14-18(a)(2) and Chapter 672-20 of the Rules of the Georgia Department of Transportation.

q) Traffic Studies. OPTOTRAFFIC shall, at no additional cost to MACON-BIBB, be responsible for conducting the traffic studies required by and described in Chapter 672-20 of the Rules of the Georgia Department of Transportation.

2. **MACON-BIBB'S Responsibilities**. MACON-BIBB acknowledges that certain aspects of the Service require the participation and cooperation of MACON-BIBB, without which OPTOTRAFFIC'S performance of the Services may be significantly impaired or delayed. MACON-BIBB is responsible for the following:

a) Service Location. MACON-BIBB will select the location(s) at which the Monitoring System will detect and record potential violations ("Service Location(s)"). MACON-BIBB intends to install Monitoring Systems in phases. Phase One shall consist of the schools and school zones listed in Exhibit A. After the commencement of service at a Service Location, MACON-BIBB may elect to change the Service Location by notifying OPTOTRAFFIC, but OPTOTRAFFIC reserves the right to decline a request to change a Service Location that in OPTOTRAFFIC'S opinion is technically infeasible. MACON-BIBB may not use the Services for any purpose not allowed by law.

b) Preserve the Monitoring System. MACON-BIBB acknowledges that the Monitoring System used to detect and record Recorded Events consists of valuable personal and intellectual property of OPTOTRAFFIC. MACON-BIBB agrees to use its best efforts to safely use, protect and preserve the Monitoring System during the term of this Agreement, including, but not limited to, restricting movement of and access to the Monitoring System by anyone other than MACON-BIBB and OPTOTRAFFIC personnel.

c) Use of the Traffic Monitoring System. After installation, the MACON-BIBB has the sole responsibility to use the traffic Monitoring System subject to equipment maintenance, the functions outlined in this Agreement as the responsibility of OPTOTRAFFIC and authorizes OPTOTRAFFIC to be its "Agent" as defined under

Article 2 of Chapter 14 of Title 40 Section 1.1 of the Official Code of Georgia Annotated.

d) Maintain Daily Self-Test Log. MACON-BIBB will maintain through VioView™ a log for the Monitoring System attesting to the performance of the Monitoring System's self-test at least once every 30 days and the results of such self-test pertaining to the accuracy of the automated traffic enforcement safety device pursuant to O.C.G.A § 40-14-5(c)(1). OPTOTRAFFIC shall, at no additional cost to MACON-BIBB, be responsible for any adjustments or repairs deemed necessary as a result of the daily self-tests.

e) Designate Citation Approving Authorities. MACON-BIBB shall select and designate certain sworn officers or other duly authorized approving authorities ("Approving Authorities") who shall review Recorded Events, identify traffic violations, and lawfully authorize and issue citations for such identified violations using the VioView™ software and website. MACON-BIBB has sole responsibility for ensuring that the designated approving authorities are duly and lawfully authorized to receive and view DMV records and issue citations for the pertinent traffic violations. OPTOTRAFFIC will assign those authorities a login-ID for accessing VioView™ software and website. The parties agree that OPTOTRAFFIC shall not be the Approving Authority.

f) Safeguard Login Information. MACON-BIBB will receive one (1) login-ID to VioView™ per Approving Authority. MACON-BIBB acknowledges that VioView™ login-IDs allow full access to Recorded Event data, including but not limited to, information derived from DMV records, and allows the ability to authorize and issue citations. MACON-BIBB shall be solely and exclusively responsible for safeguarding VioView™ login-IDs and ensuring that unauthorized individuals do not gain access to VioView™. OPTOTRAFFIC will also provide MACON-BIBB one (1) VioView™ FTS login-ID for the exclusive use by individuals authorized by MACON-BIBB to view citations and financial information. It shall be the MACON-BIBB'S responsibility to safeguard the VioView™ FTS login-ID as issued. MACON-BIBB will immediately notify OPTOTRAFFIC of any compromise or suspected compromise of any login-ID within its knowledge. Use of VioView™ FTS is governed by the terms of service posted on the VioView™ Website.

g) Collection of Citation Payments by MACON-BIBB. MACON-BIBB shall not collect citation payments in any manner that is inconsistent with the provisions of this Agreement. MACON-BIBB shall instruct individuals to either pay online or mail all such payments to the Lockbox Account described in Section 7.

3. **Credit Card Payment Processing.** OPTOTRAFFIC will provide the capability for individuals receiving citations to pay their citations by credit card at no additional charge

to MACON-BIBB. OPTOTRAFFIC will provide individuals receiving citations access to its website via the Internet to view and pay citations online. OPTOTRAFFIC is solely responsible for the functionality, security and maintenance of the payment system and will ensure that it conforms to all federal, local and state laws, rules and regulations, as well as any and all banking rules and regulations that pertain to all forms of credit card payment. Credit card processing costs will be paid by OPTOTRAFFIC; OPTOTRAFFIC is authorized to charge a reasonable credit card convenience fee to individuals who pay by credit card and such credit card convenience fees are not considered revenue under this Agreement and will be retained in full by OPTOTRAFFIC.

4. **System Ownership, Operation, Maintenance and Modifications.**

a) OPTOTRAFFIC does not convey any equipment or system to MACON-BIBB. Equipment or system or any part of the equipment or system provided or used by OPTOTRAFFIC in connection with the provision of Services under this Agreement is and shall remain the exclusive property of OPTOTRAFFIC.

b) In the event OPTOTRAFFIC determines, in its sole discretion, that MACON-BIBB is not utilizing all or any part of the Monitoring System in a sufficient manner, OPTOTRAFFIC may recall all or any of its Monitoring System and MACON-BIBB agrees to make such recalled portion of the Monitoring System immediately available for retrieval by OPTOTRAFFIC.

c) Monitoring System or equipment replacement, repairs, upgrades or modifications which, in the reasonable opinion of OPTOTRAFFIC, are required as a result of neglect, misuse, theft or loss while in the MACON-BIBB'S Possession, including without limitation a repair arising from or in connection with the use of software other than software provided by OPTOTRAFFIC, shall be made at the sole expense of MACON-BIBB, including but not limited to, the actual cost of the repair or replacement of said system, along with labor costs at OPTOTRAFFIC'S then-current hourly rate, shipping, and travel expenses, as applicable. Otherwise, all such Monitoring System or equipment replacement, repairs, upgrades or modifications shall be made at the sole expense of OPTOTRAFFIC.

d) Upgrades to OPTOTRAFFIC'S Systems and/or reinstallations and/or modifications of hardware or software which are requested in writing by the MACON-BIBB but reasonably not deemed necessary or required for proper system operation by OPTOTRAFFIC, shall be made at the sole expense of MACON-BIBB. This includes, but is not limited to, the actual cost of the upgrades, modification, or replacements of said system, hardware or software, along with shipping expenses, travel expenses if required, and labor costs at OPTOTRAFFIC'S then-current hourly rate. OPTOTRAFFIC must provide to the MACON-BIBB a detailed accounting of these costs and expenses and the cost and

expenses must be pre-approved by MACON-BIBB in writing prior to OPTOTRAFFIC undertaking the upgrade(s).

5. **Training and Support**. Throughout the Term of this Agreement, OPTOTRAFFIC at no additional cost to MACON-BIBB, agrees to provide training for using the Monitoring System and or VioView™ and or VioView™ FTS software and website. OPTOTRAFFIC will provide a reasonable number of reference manuals describing the features and operations for the Monitoring System, VioView™ and VioView™ FTS. OPTOTRAFFIC, at no additional cost to MACON-BIBB, will issue upon request a signed certificate to MACON-BIBB on completion of all training. OPTOTRAFFIC will endeavor to provide updates to VioView™ and VioView™ FTS software within a reasonable time after they become generally available; provided, however, that OPTOTRAFFIC has no obligation under this Agreement to update or modify its software in any way. Throughout the Term of this Agreement, reasonable technical assistance will be available by telephone at no charge to MACON-BIBB during the hours of 8:00 a.m. to 5:00 p.m. (EST), Monday through Friday (with the exception of all state and nationally recognized holidays).

6. **OPTOTRAFFIC Fees**. In exchange for the Services described in this Agreement, MACON-BIBB agrees to pay OPTOTRAFFIC the fees set forth in Exhibit A. Fees will be calculated based on documentation and reports extracted from VioView™ FTS. MACON-BIBB agrees that such documentation from VioView™ FTS is a fair and accurate basis for the calculation of the fees due under this Agreement and such documentation shall be relevant and material in any dispute between the parties with respect to fees due hereunder. OPTOTRAFFIC and MACON-BIBB will have access to VioView™ FTS reports. OPTOTRAFFIC will use these reports to calculate fees due to OPTOTRAFFIC.

7. **Distribution of Funds**. As an administrative convenience to MACON-BIBB and to ensure accurate and complete tracking of program funds, OPTOTRAFFIC will establish, at no additional cost to MACON-BIBB, a bank account with lockbox service ("Lockbox Account") for the purpose of accepting deposits of violation payments, including credit card payments and returned check processing costs. MACON-BIBB approved violations are uniquely identified and within the Lockbox Account, MACON-BIBB violation payments are also uniquely identified and reconciled on a weekly basis. Furthermore, on a monthly basis, on Friday, or the following business day in the event that Friday falls on a bank holiday, commencing the month following the first payment receipt, MACON-BIBB expressly authorizes OPTOTRAFFIC to distribute to MACON-BIBB funds deposited net of the Fees set forth in Exhibit A, and distribute the remainder of the funds to OPTOTRAFFIC for services provided. OPTOTRAFFIC, at no additional cost to MACON-BIBB, agrees to maintain such bank account for a minimum of 12 months after the date of termination of this Agreement.

8. **Confidentiality**. MACON-BIBB and OPTOTRAFFIC agree not to disclose information related to performance of the Services under this Agreement to anyone except as required by law or by mutual agreement.

9. **Term, Commencement of Service, and Termination.**

a) Term. This Agreement shall become effective as of the date it is fully executed by both Parties. This Agreement shall terminate without further obligation on the part of MACON-BIBB on June 30th of each year, and shall renew automatically on July 1st of each year, unless prior notification is delivered to either Party thirty (30) days in advance of the renewal date of this Agreement. In the absence of written documentation, this Agreement will remain in full force and effect until June 30, 2024, or until such time as either Party notifies the other of their desire to terminate this Agreement. (Ga. Code Ann. § 36-60-13.)

b) On each anniversary date thereafter, this Agreement will automatically renew for a one-year period upon the same terms and conditions ("Renewal Term"). If either MACON-BIBB or OPTOTRAFFIC elects not to renew, it must notify the other party in writing of its intention not to renew this Agreement at least ninety (90) days prior to any such anniversary date, in which case this Agreement shall terminate on such anniversary date.

c) Commencement of Service. OPTOTRAFFIC and MACON-BIBB shall make reasonable efforts to enable commencement of services as soon as practicable upon the Effective Date of this Agreement.

d) Termination for Default. Either party shall be entitled to terminate this Agreement in the event of a failure by the other party to perform any of its material obligations under this Agreement if such breach is not cured within thirty (30) days after receipt of notice thereof from the non-defaulting party or within ten (10) days after receipt of such notice if such breach relates to the non-payment of Fees or other amounts owed hereunder or a breach by MACON-BIBB which materially compromises the security of the Services or Confidential Information.

e) Termination by MACON-BIBB for Convenience. Notwithstanding subsection (a) above, MACON-BIBB may terminate this Agreement for Convenience upon sixty (60) days prior written notice to OPTOTRAFFIC and declare the effective date of such termination. The parties shall reconcile amounts owed and/or to which each is entitled under this Agreement up to the date of termination of this Agreement and any subsequent Initial or Renewal Term runout, if applicable.

f) Effect of Termination. In the event of any termination of this Agreement, MACON-BIBB will suspend operations of the Monitoring System and return to OPTOTRAFFIC such Monitoring System upon providing or receiving a notice of termination. MACON-BIBB will return to OPTOTRAFFIC within ten (10)

working days of the termination date all manuals, documentation and all other property and materials of OPTOTRAFFIC provided to MACON-BIBB hereunder. Upon the return of all such property and materials to OPTOTRAFFIC, and providing that there are no outstanding invoices, OPTOTRAFFIC will provide MACON-BIBB with all of the Event Records, defined in Section 18 below, pertaining to MACON-BIBB in OPTOTRAFFIC'S possession, such Event Records to be provided to MACON-BIBB in Portable Document Format, at no cost to MACON-BIBB. OPTOTRAFFIC and MACON-BIBB for a minimum of 12 months after the termination date will continue the collection and distribution of revenue in accordance to this Agreement. Furthermore, for a minimum of 12 months OPTOTRAFFIC may continue to operate with any third party with whom the MACON-BIBB contracts to provide debt collections services in connection with their collection efforts relating to any citations.

g) Suspension of Monitoring Operations. MACON-BIBB and OPTOTRAFFIC reserve the right to suspend immediately any and all traffic monitoring operations if continuation of such operations creates an unsafe condition. Upon notification from OPTOTRAFFIC or the MACON-BIBB, in writing, OPTOTRAFFIC and MACON-BIBB will suspend such operations until the parties agree to and resolve the condition(s) that led to the suspension. OPTOTRAFFIC shall be obligated to continue the processing of Recorded Events prior to the notice of suspension or termination of monitoring operations, and receive payment for, all citations issued based upon such Recorded Events.

h) Survival of Certain Terms. The provisions of Sections 6, 8, 12, and 16 shall survive any suspension or revocation or termination of this Agreement. No termination of this Agreement by either party for any reason shall serve to cancel, waive or otherwise affect any fees due to OPTOTRAFFIC or MACON-BIBB hereunder resulting from Recorded Events having accrued on or before the effective date of any such termination.

**10. Representations and Warranties.**

a) MACON-BIBB represents and warrants that:
   i. MACON-BIBB is a tax-exempt entity under the rules of the Internal Revenue Service and will provide OPTOTRAFFIC with a copy of its tax exempt status upon request;
   ii. MACON-BIBB will comply with all applicable laws, rules and regulations in the use of the Services and in the performance of its obligations under and in connection with this Agreement, including, but not limited to, the receipt and use of DMV information and the authorization and issuance of citations.

b) OPTOTRAFFIC represents and warrants that it will perform the Services with care, skill, and diligence, in a commercially reasonable and professional manner, and shall be responsible for the professional quality and technical accuracy of the Services furnished under this Agreement. OPTOTRAFFIC shall comply with all applicable laws, rules and regulations fulfilling OPTOTRAFFIC'S obligations under this Agreement.

c) OPTOTRAFFIC owns and has the right to use, and make available for use by MACON-BIBB, ***VioView™***, ***VioView™* FTS** and any similar software for the purposes of providing Services under this Agreement, and that such use will not violate or infringe upon the title or rights of use of such software by others.

d) **No other Warranties. EXCEPT AS EXPRESSLY PROVIDED ABOVE, OPTOTRAFFIC MAKES NO OTHER WARRANTIES, EXPRESS OR IMPLIED, INCLUDING WITHOUT LIMITATION ANY WARRANTY CONCERNING MERCHANTABILITY OR FITNESS FOR ANY PARTICULAR PURPOSE OR ANY WARRANTY REGARDING THE PRODUCTIVITY OF THE SYSTEM OF OPTOTRAFFIC.**

11. **Insurance and Limitation of Liability.** OPTOTRAFFIC shall purchase and maintain during the entire term of this Agreement, comprehensive general liability insurance and workers' compensation insurance with limits of not less than those set forth below.

a) Comprehensive General Liability Insurance. Personal injury liability insurance with a limit of $1,000,000 each occurrence/$2,000,000 aggregate; Property damage liability insurance with limits of $500,000 each occurrence/$1,000,000 aggregate. All insurance shall include completed operations and contractual liability coverage.

b) Automobile Liability Coverage. Automobile fleet insurance $1,000,000 for each occurrence/aggregate; property damage $500,000 for each occurrence/aggregate.

c) Workers' Compensation Insurance. OPTOTRAFFIC shall comply with the requirements and benefits established by the State of Georgia for the provision of Workers' Compensation Insurance. OPTOTRAFFIC shall provide workers' compensation insurance meeting the statutory limits for Georgia and Employers' Liability limits of $500,000. All corporations are required to provide Workers' Compensation Certificates of Insurance.

OPTOTRAFFIC covenants to maintain insurance, in these amounts, which will insure all activities undertaken by OPTOTRAFFIC on behalf of the MACON-BIBB under this Agreement. MACON-BIBB shall be provided not less than 30 days prior written notice of any cancellation, reduction or other material change in the insurance provided under this Paragraph 11. MACON-BIBB shall be named as a certificate holder and additional insured on the insurance maintained pursuant to Paragraphs 11.a) and 11.b). Upon commencement of this Agreement, and thereafter as requested by MACON-BIBB, OPTOTRAFFIC shall provide MACON-BIBB with a certificate or certificates evidencing the coverages required by this Paragraph 11.

12. **Indemnification**. To the extent, if any, permitted by law, and then only to the extent caused by wrongdoing of OPTOTRAFFIC, OPTOTRAFFIC shall hold MACON-BIBB harmless from any liability arising from OPTOTRAFFIC'S performance of this Agreement and to the extent, if any, permitted by law, and then only to the extent caused by wrongdoing of MACON-BIBB, MACON-BIBB shall hold OPTOTRAFFIC harmless from any liability arising from MACON-BIBB's performance of the Agreement. This paragraph does not affect the obligations of MACON-BIBB under Distribution of Funds in Paragraph 7.

13. **Compliance with Laws**. OPTOTRAFFIC and MACON-BIBB each agree to comply with all applicable laws governing this Agreement and the performance of its terms, including laws governing the confidentiality of information. OPTOTRAFFIC and MACON-BIBB further agree that, unless authorized by MACON-BIBB, the information provided by MACON-BIBB and/or the DMV, including the names and addresses and associated information of persons and entities that have received a citations, shall remain confidential except as required by law, and shall not be sold or shared with any other non-party, company or entity for any purpose, including but not limited to marketing, sales, and/or solicitations.

14. **Force Majeure**. OPTOTRAFFIC shall not be liable for any delays or failures in the system of OPTOTRAFFIC or otherwise in the performance of the Services, which delays, or failures are directly or indirectly caused by vandalism, flood, storm, lightning, earthquake, tornado, other Acts of God, or war, riot, sabotage, strike, utility outage or other factors or circumstances beyond OPTOTRAFFIC'S reasonable control.

15. **Independent Contractors**. With respect to each other, OPTOTRAFFIC and MACON-BIBB are independent contractors, and neither party, nor their respective officers, agents, employees, shall be deemed to be employees by the other party for any purpose. Further, OPTOTRAFFIC and MACON-BIBB shall not be deemed to be partners, agents, joint ventures, or anything other than independent contractors.

16. **Governing Law**. This Agreement and the rights and obligations of the parties and their successors and assigns hereunder shall be interpreted, construed, and enforced in accordance with the laws of the State of Georgia without regard to its choice and/or conflict of laws provisions. Any legal action resulting from, arising under, out of or in connection with, directly or indirectly, this Agreement shall be commenced exclusively in the state or federal courts in the State of Georgia. Venue for any action arising under this Agreement shall lie in Macon-Bibb County, Georgia. All parties to this Agreement hereby submit themselves to the jurisdiction of any such court, and agree that service of process on them in any such action, suit or proceeding may be affected by the means by which notices are to be given under this Agreement. In the event of litigation by a party hereto to enforce its

rights hereunder, the prevailing party shall be entitled to recover its reasonable attorney's fees, costs and disbursements.

17. **Notices**. All notices, requests, demands and other communications required or permitted hereunder shall be in writing and shall be deemed to have been duly given if delivered by hand or mailed, express, certified or registered mail, return receipt requested, with postage prepaid, or sent priority next day delivery by a nationally recognized overnight courier service that regularly maintains records of items picked up and delivered to the parties at the addresses first set forth above or to such other person or address as a party shall notify the other in writing. Notices delivered personal shall be deemed communicated as of the date of actual receipt, mailed notices shall be deemed communicated as of the date three (3) business days after mailing, and notices sent by courier shall be deemed communicated as of the date two (2) business days after pick-up.

18. **Retention of Records by OPTOTRAFFIC**. OPTOTRAFFIC will store recorded images associated with issued citations and related citation information ("Event Records") developed for MACON-BIBB in the course of providing Services under this Agreement in accordance with the following rules:
    a) OPTOTRAFFIC will store Event Records for a minimum of 24 months from the Event date.
    b) OPTOTRAFFIC will store Event Records for paid citations in Portable Document Format (PDF).
    c) After 24 months from the Recorded Event date, OPTOTRAFFIC will delete Event Records.

    In the event that MACON-BIBB desires to retain any such Event Records beyond 24 months, OPTOTRAFFIC will provide MACON-BIBB with such Event Records in OPTOTRAFFIC'S possession, provided that OPTOTRAFFIC receives at least thirty (30) days prior written notice. OPTOTRAFFIC will provide such Event Records to MACON-BIBB and MACON-BIBB will compensate OPTOTRAFFIC for, materials, shipping expenses, travel expenses if required, and labor costs at OPTOTRAFFIC'S then-current hourly rate.

    OPTOTRAFFIC is not a government "agency" as that term is defined in O.C.G.A. § 50-18-70(b)(1). MACON-BIBB has not hired OPTOTRAFFIC, nor does OPTOTRAFFIC serve, in any capacity as a custodian of MACON-BIBBS' records, including but not limited to any records identified herein including those in Section 18.

19. **Entire Agreement**. This Agreement contains the entire agreement between the parties as to the subject matter herein and supersedes and replaces all prior contemporaneous agreements, oral and written, between the parties hereto. This Agreement may be modified only by a written instrument signed by both parties.

20. **Severability.** If a provision of this Agreement is or becomes illegal, unenforceable, or invalid, it shall not affect the enforceability or validity of any other provision of this Agreement.

21. **Counterparts**. This Agreement may be executed in counterparts of each which shall be deemed an original and all of which taken together shall constitute one and the same agreement. Delivery of an executed counterpart of this Agreement by facsimile shall be equally as effective as delivery of a manually executed counterpart of this Agreement.

**IN WITNESS WHEREOF**, the duly authorized representatives of the parties hereto have affixed their signatures below:

| **OPTOTRAFFIC, LLC** | **Macon-Bibb COUNTY, GA** |
|---|---|
| BY: [signature] | By: [signature] |
| Name: Thomas Bouchard | Name: Lester M. Miller |
| Title: Chief Executive Officer | Title: Mayor |
| Date: February 24, 2021 | Date: 3/1/2021 |

**EXHIBIT A**
**TO THE SERVICE AGREEMENT BY AND BETWEEN**
**MACON-BIBB COUNTY, GEORGIA**
**AND**
**OPTOTRAFFIC, LLC**

1. **Service Location**: School zone enforcement locations as directed by MACON-BIBB. MACON-BIBB intends to install Monitoring Systems in phases, with Phase One consisting of the following schools and school zones:

   **School Zone 1**
   - Central High School

   **School Zone 2**
   - Howard High School and Howard Middle School

   **School Zone 3**
   - Northeast High School and Appling Middle School

   **School Zone 4**
   - Rutland High School

   and Rutland MS

   **School Zone 5**
   - Southwest High School

   **School Zone 6**
   - Westside High School

   **School Zone 7**
   - Ballard-Hudson Middle School

   **School Zone 8**
   - Miller Middle School

   **School Zone 9**
   - Weaver Middle School

2. **Fee due to OPTOTRAFFIC**: For the provisioning, deployment, maintenance & service of each Monitoring System, along with our full suite of back office processing services such as printing, mailing, web and lockbox payment processing, court docket preparation and adjudication, registration holds, call center etc. MACON-BIBB shall pay OPTOTRAFFIC:

   $25.00 Fixed Fee per Paid Citation

3. **Fee due to OPTOTRAFFIC**: For processing and administrative support, data transfer etc. involved with a 3rd party Collection Agency program for unpaid citations, MACON-BIBB shall pay OPTOTRAFFIC:

   $10.00 Fixed Fee per Citation Paid through a Collection Agency

**EXHIBIT B**
**TO THE SERVICE AGREEMENT BY AND BETWEEN**
**MACON-BIBB COUNTY, GEORGIA**
**AND**
**OPTOTRAFFIC, LLC**

**Vio View Software Terms and Conditions**

Last updated: February 4, 2021.

Please read these terms and conditions carefully before using Our Service.

## Interpretation and Definitions

Interpretation

The words of which the initial letter is capitalized have meanings defined under the following conditions. The following definitions shall have the same meaning regardless of whether they appear in singular or in plural.

Definitions

For the purposes of these Terms and Conditions:

- Affiliate means an entity that controls, is controlled by or is under common control with a party, where "control" means ownership of 50% or more of the shares, equity interest or other securities entitled to vote for election of directors or other managing authority.
- Country refers to: Georgia, United States
- Company (referred to as either "the Company", "We", "Us" or "Our" in this Agreement) refers to Optotraffic LLC, 4600 Forbes Blvd., Lanham, MD 20706.
- Device means any device that can access the Service such as a computer, a cellphone or a digital tablet.
- Service refers to the Website.
- Data refers to motor vehicle registration data obtained for the exclusive use of issuing automated speed and red light traffic enforcement.
- Terms and Conditions (also referred as "Terms") mean these Terms and Conditions that form the entire agreement between Macon-Bibb and the Company regarding the use of the Service.
- Third-party Social Media Service means any services or content (including data, information, products or services) provided by a third-party that may be displayed, included or made available by the Service.
- Website refers to VioView, accessible from https://vioview.optotraffic.com

- Macon-Bibb means Macon-Bibb County, a political subdivision of the State of Georgia, United States.

**Acknowledgment**

These are the Terms and Conditions governing the use of this Service and the agreement that operates between Macon-Bibb and the Company. These Terms and Conditions set out the rights and obligations of all users regarding the use of the Service.

Macon-Bibb's access to and use of the Service is conditioned on Macon-Bibb's acceptance of and compliance with these Terms and Conditions. These Terms and Conditions apply to all visitors, users and others who access or use the Service.

By accessing or using the Service Macon-Bibb agrees to be bound by these Terms and Conditions.

Macon-Bibb's access to and use of the Service is also conditioned on Macon-Bibb's acceptance of and compliance with the Privacy Policy of the Company. Our Privacy Policy describes Our policies and procedures on the collection, use and disclosure of Macon-Bibb's personal information when Macon-Bibb uses the Application or the Website and tells Macon-Bibb about Macon-Bibb's privacy rights and how the law protects Macon-Bibb. Please read Our Privacy Policy carefully before using Our Service.

**Data Usage**

The Data shall only be used for the exclusive purpose of processing and issuing citations for automated speed and red light violations. The Data shall not be shared with any third-party, unless such disclosure is required by Georgia law, including but not limited to the Open Records Act of Georgia, codified at O.C.G.A. § 50-18-70. Macon-Bibb agrees to destroy any hard copies of printed Data via shredding, or other means. The Data will not be made publicly available, unless so required by law.

**User Accounts**

User accounts are assigned to individual users. Users agree not to share login credentials with anyone. Macon-Bibb agrees not to circumvent any authentication process to gain access to the Website.

**Termination**

We may terminate or suspend Macon-Bibb's access immediately, without prior notice or liability, for any reason whatsoever, including without limitation if Macon-Bibb breaches these Terms and Conditions. This section of the Agreement is subject to the requirements of the section of this agreement titled "Disputes Resolution."

Upon termination, Macon-Bibb's right to use the Service will cease immediately.

**"AS IS" and "AS AVAILABLE" Disclaimer**

The Service is provided to Macon-Bibb "AS IS" and "AS AVAILABLE" and with all faults and defects without warranty of any kind. To the maximum extent permitted under applicable law, the Company, on its own behalf and on behalf of its Affiliates and its and their respective licensors and service providers, expressly disclaims all warranties, whether express, implied, statutory or otherwise, with respect to the Service, including all implied warranties of merchantability, fitness for a particular purpose, title and non-infringement, and warranties that may arise out of course of dealing, course of performance, usage or trade practice. Without limitation to the foregoing, the Company provides no warranty or undertaking, and makes no representation of any kind that the Service will meet Macon-Bibb's requirements, achieve any intended results, be compatible or work with any other software, applications, systems or services, operate without interruption, meet any performance or reliability standards or be error free or that any errors or defects can or will be corrected.

Without limiting the foregoing, neither the Company nor any of the company's provider makes any representation or warranty of any kind, express or implied: (i) as to the operation or availability of the Service, or the information, content, and materials or products included thereon; (ii) that the Service will be uninterrupted or error-free; (iii) as to the accuracy, reliability, or currency of any information or content provided through the Service; or (iv) that the Service, its servers, the content, or e-mails sent from or on behalf of the Company are free of viruses, scripts, trojan horses, worms, malware, timebombs or other harmful components.

Some jurisdictions do not allow the exclusion of certain types of warranties or limitations on applicable statutory rights of a consumer, so some or all of the above exclusions and limitations may not apply to Macon-Bibb. But in such a case the exclusions and limitations set forth in this section shall be applied to the greatest extent enforceable under applicable law.

**Governing Law**

The laws of the Country, including its conflicts of law rules, shall govern this Agreement and Macon-Bibb's use of the Service. Macon-Bibb's use of the Application may also be subject to other local, state, national, or international laws.

**Disputes Resolution**

If Macon-Bibb has any concern or dispute about the Service, Macon-Bibb agrees to first try to resolve the dispute informally by contacting the Company. If We have any concern or dispute about the Service, We agree to first try to resolve the dispute informally by contacting Macon-Bibb.

**United States Legal Compliance**

Macon-Bibb represents and warrants that (i) Macon-Bibb is not located in a country that is subject to the United States government embargo, or that has been designated by the United

States government as a "terrorist supporting" country, and (ii) Macon-Bibb is not listed on any United States government list of prohibited or restricted parties.

**Severability and Waiver**

Severability

If any provision of these Terms is held to be unenforceable or invalid, such provision will be changed and interpreted to accomplish the objectives of such provision to the greatest extent possible under applicable law and the remaining provisions will continue in full force and effect.

Waiver

Except as provided herein, the failure to exercise a right or to require performance of an obligation under this Terms shall not affect a party's ability to exercise such right or require such performance at any time thereafter nor shall be the waiver of a breach constitute a waiver of any subsequent breach.

**Translation Interpretation**

These Terms and Conditions may have been translated if We have made them available to Macon-Bibb on our Service. Macon-Bibb agrees that the original English text shall prevail in the case of a dispute.

**Changes to These Terms and Conditions**

We reserve the right, at Our sole discretion, to modify or replace these Terms at any time. If a revision is material We will make reasonable efforts to provide at least 30 days' notice prior to any new terms taking effect. What constitutes a material change will be determined at Our sole discretion.

By continuing to access or use Our Service after those revisions become effective, Macon-Bibb agrees to be bound by the revised terms. If Macon-Bibb does not agree to the new terms, in whole or in part, please stop using the website and the Service.

**Contact Us**

If Macon-Bibb has any questions about these Terms and Conditions, Macon-Bibb can contact us:

- By email: webmaster@optotraffic.com
- By phone number: 888-332-8528
- By mail: 4600 Forbes Boulevard, Suite 203, Lanham, MD 20706, United States

# EXHIBIT B

# CITATION
## SPEED MONITORING VIOLATION

**You may view full color images and pay online at:**
www.onlinecitationpayment.com
Citation Number: BB10144348 Pin Number: 1255









Please take notice that the vehicle described and pictured herein was detected and recorded by a speed monitoring system exceeding the posted speed limit by at least 11 MPH in violation of Article 2 of Chapter 14 of Title 40-14-18 in O.C.G.A. The pictured vehicle was traveling at the speed listed below at the place, date, and time specified. Therefore, under Georgia State Law O.C.G.A. 40-14-18 as the registered owner(s) or lessee you are liable for the violation. Unless you elect to go to court, a civil penalty in the amount of $100.00 (includes $25 electronic processing fee) must be paid by the due date shown on this notice.

**PAYMENT OF THE PENALTY AMOUNT FOR THE VIOLATION WILL NOT RESULT IN POINTS AND CANNOT BE USED TO INCREASE YOUR INSURANCE RATES.**

**WARNING: FAILURE TO PAY THE PENALTY SHOWN, OR TO CONTEST LIABILITY DESCRIBED IN THE NEXT PARAGRAPH IS AN ADMISSION OF LIABILITY AND MAY RESULT IN THE REFUSAL OR SUSPENSION OF THE MOTOR VEHICLE REGISTRATION.**

**PROOF THAT A MOTOR VEHICLE WAS OPERATED IN DISREGARD OR DISOBEDIENCE OF THE SPEED LIMIT OF THE MARKED SCHOOL ZONE SHALL BE EVIDENCED BY PHOTOGRAPHICALLY RECORDED IMAGES.**

| DATE AND TIME OF VIOLATION | LOCATION OF VIOLATION | VEHICLE TAG |
|---|---|---|
| February 23, 2024 03:52:19 PM | 5900 Block of Zebulon Rd EB Bibb County GA | GA SEN4768 |
| **POSTED SPEED** 25 mph | **VEHICLE SPEED** 41 mph | **DUE DATE** 03/30/24 |
| **VIOLATION NUMBER** BB10144348 | **AMOUNT DUE** $100.00 | |

### CERTIFICATE

*I am a duly certified peace officer employed by or under contract with the Bibb County Sheriff's Office. Based on inspection of the recorded images above, a motor vehicle was operated in disregard or disobedience of the speed limit in the marked school zone, which was not otherwise authorized by law, in violation of Article 2, Chapter 14, Title 40-14-18 of O.C.G.A. Sworn to or Affirmed By:*

Signature:  ID#: 0449

A Public Safety Program of Bibb County Sheriff's Office
(866) 933-9574 / TTY - GA Relay: 711

Detach here and return

**Citation Number** BB10144348

| **Due Date** | **Fine Amount Due** |
|---|---|
| 03/30/24 | $100.00 |

**NAME & ADDRESS OF REGISTERED OWNER**

FORWARDING SERVICE REQUESTED
DEMETRA JOY LAVENDER
3559 JOYCLIFF RD LOT 82
MACON, GA 31211

**You can view full color images at:**
www.onlinecitationpayment.com
Citation No.: BB10144348 Pin No: 1255

☐ **IF YOU WANT TO PAY THIS CITATION: (Do not send cash.)**

1. Mail your check or money order for $100.00 (made payable to Bibb County Sheriff's Office) along with this form to:

   Bibb County Sheriff's Office
   PO Box 746902
   Atlanta GA 30374-6902

2. Pay Online at: www.onlinecitationpayment.com
3. Pay by Phone: (866) 933-9574 / TTY - GA Relay: 711

See further instructions on the back of this citation.

Payment is considered an ADMISSION OF LIABILITY and waives your right to a hearing. Payment must be received on or before the due date.

☐ **IF YOU WANT TO REQUEST A COURT HEARING:**
Follow the instructions on the back of this form.

6110

# Citation Speed Monitoring Violation

A vehicle, registered or leased to you, was photographed by an automatic camera connected to a speed monitoring system. Vehicles exceeding the posted speed limit by at least 11 MPH are detected automatically and two photographs are taken. Superimposed on each photograph is the date, time, location, and speed of the vehicle when the violation occurred. An example of the superimposed data bar appears below.

This citation is not considered a "moving violation". It is a civil citation holding the registered owner or lessee responsible for the violation (similar to a parking ticket). NO POINTS CAN BE ASSESSED FOR THIS VIOLATION AND IT WILL NOT RAISE YOUR INSURANCE RATES!

If you fail to request a trial or pay the citation within the time allowed, this jurisdiction will notify the Department of Revenue (DOR) to place a flag against your vehicle record to prevent your registration from being renewed or transferred to another vehicle.

**PAYMENT OPTIONS**
**Pay by Web:** www.onlinecitationpayment.com
**Pay by Phone:** (866) 933-9574 / TTY – GA Relay: 711
**Pay by Mail:** Check or money order should be payable to: Bibb County Sheriff's Office and mailed to: PO Box 746902 Atlanta GA 30374-6902.

**TO REQUEST A COURT DATE** You may request to appear in Court by returning the completed form below, at least five (5) days prior to the "Due Date" shown on the front of this notice and return it to Bibb County Sheriff's Office, PO Box 746902 Atlanta GA 30374-6902. Follow the instructions below to request a court date. You will be notified by mail of the court date. If you do not receive a notice within 30 days, call Bibb County Sheriff's Office (866) 933-9574 / TTY - GA Relay: 711.

**IF YOU WERE NOT THE DRIVER** If you, as the registered owner, were not operating the vehicle at the time of the violation, in order to prove that you were not the driver, you must testify under oath in open court or submit to the court a sworn notarized statement that you were not the operator of the vehicle at the time of the alleged violation. The letter must be mailed by certified mail, return receipt requested. Include in the letter all corroborating evidence. Send your letter in an envelope marked "SPEED VIOLATION - NOT THE DRIVER" to: Bibb County Sheriff's Office, PO Box 746902 Atlanta GA 30374-6902.

**STOLEN VEHICLE OR REGISTRATION PLATE** The owner MUST provide a copy of the police report for the stolen vehicle or plates detailing that the vehicle or tag was stolen prior to the violation: Send to: Bibb County Sheriff's Office, PO Box 746902 Atlanta GA 30374-6902.

**REQUESTS FOR ACCOMMODATION** Both the Court and the Sheriff's Office will make any reasonable accommodation for persons with disabilities. Requests should be directed to the appropriate agency prior to visiting the facility.

**FOR ALL OTHER QUESTIONS CONTACT** Bibb County Sheriff's Office, PO Box 746902 Atlanta GA 30374-6902 or (866) 933-9574 / TTY - GA Relay: 711.

**Sample Data Bar**

| | |
|---|---|
| Location: 1000 Main Street, Macon-Bibb County, GA | Photo Number: 1 |
| Date: 10/15/2019 Time: 10:50:43.718 AM | Violation Number: 842 |
| Lane: 2, Speed Limit: 30, Vehicle Speed: 47 | |
| Unit ID: 70006 Camera ID: 4209-002 | |

Detach here and return 20220505

## USE THIS FORM TO PAY

1. Note any corrections to your name and address as they appear on the reverse side of this form.
2. Daytime telephone number (optional): ______________________
3. Mail your check or money order for $100.00 (made payable to Bibb County Sheriff's Office) along with this form to:

**BIBB COUNTY SHERIFF'S OFFICE**
**PO BOX 746902**
**ATLANTA GA 30374-6902**

00010000BB101443484

## USE THIS FORM TO REQUEST A COURT DATE

1. Note any corrections to your name and address as they appear on the reverse side of this form.
2. Daytime telephone number (optional): ______________________
3. Return this signed form at least 5 days prior to the "Due Date" on the reverse side of this form. Mail this request for a court date to:

   Bibb County Sheriff's Office
   PO Box 746902
   Atlanta GA 30374-6902

4. Do not send payment with your request for court date.
5. You will be notified by mail of the court date, time, and location.

☐ My vehicle or tag was stolen at the time of the violation.
☐ I was not operating the vehicle at the time of the violation.

I hereby request a hearing date to appear in Court to contest the liability assigned to me by this citation.

______________________________ SIGNATURE OF REGISTERED OWNER OR LESSEE
______________ DATE

# EXHIBIT C

PAYMENT RECEIPT

**Your payment has been accepted**

| | | |
|---|---|---|
| Merchant Name | : | Online Citation Payment |
| Invoice Number | : | 1709914487101443 48 |
| Authorization Code | : | 011447 |
| Payment Date | : | 03/08/2024 11:14:49 |
| Payment Amount | : | $ 104.95 |

Print This Page For Your Records